IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **17-15611-BB**

United States of America,

Appellee,

- versus -

Scott Joseph Trader,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

<u>BRIEF FOR THE UNITED STATES</u>

Ariana Fajardo Orshan
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9001

Emily M. Smachetti
Chief, Appellate Division

Lisa Tobin Rubio
Assistant United States Attorney

Christine Hernandez
Assistant United States Attorney
Of Counsel

**United States v. Scott Joseph Trader, Case No. 17-15611-BB**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities previously included in the CIP included in the appellant's initial brief, and also includes additional persons and entities (designated in bold face) who have an interest in the outcome of this case and were omitted from the appellant's CIP.

Barnes, Antonia J.

Cannon, Aileen M**.**

Caruso, Michael

**Fajardo Orshan, Ariana**

Ferrer, Wifredo A.

Greenberg, Benjamin G.

Gyires, Marton

**Hernandez, Christine**

Hopkins, Hon. James M.

Marks, Neison

Matthewman, Hon. William

**United States v. Scott Joseph Trader, Case No. 17-15611-BB**

**Certificate of Interested Persons (Continued)**

Maynard, Hon. Shaniek M.

Middlebrooks, Hon. Donald M.

Militello, Kristy

Peacock, R. Fletcher

**Rubio, Lisa Tobin**

Smachetti, Emily M.

Trader, Scott Joseph

Villafana, Anne Marie


/s/ Christine Hernandez
Christine Hernandez
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page**:

Certificate of Interested Persons ........................................................... c-1

Statement Regarding Oral Argument ................................................... i

Table of Contents ................................................................................ ii

Table of Citations ............................................................................... iii

Statement of Jurisdiction ................................................................... iv

Statement of the Issues ....................................................................... 1

Statement of the Case:

    1.    Course of Proceedings and Disposition in the Court Below ............. 1

    2.    Statement of the Facts ................................................................. 3

        A.    The Investigation.................................................................. 3

        B.    Search Warrant..................................................................... 6

        C.    Search Warrant Execution ..................................................... 8

        D.    Motion to Suppress ............................................................... 10

        E.    Facts Pertaining to Trader's Sentencing ................................ 11

    3.    Standards of Review ..................................................................... 16

Summary of the Argument .................................................................. 16

**Table of Contents**

**(Continued)**

**Page:**

Argument and Citations of Authority:

I.    The District Court Correctly Denied Trader's Motion to Suppress

the Records Obtained from Kik because Trader Lacked a Reasonable

Expectation of Privacy in His Subscriber Information, IP Address and

Similar Descriptive Information He Disclosed to Third Parties to Facilitate

Internet Service ........................................................................ 18

II.    The District Court Did Not Err by Denying Trader's Motion to Suppress

Evidence from His Home because the Affidavit Supporting the Search

Warrant Established Probable Cause…………………………………..29

III.    Trader's Sentence of Life in Prison is Not Substantively Unreasonable ... 36

Conclusion   ........................................................................ 42

Certificate of Compliance ........................................................ 43

Certificate of Service  .............................................................. 43

## Table of Citations

**Cases:**                                                                                      **Page:**

*Carpenter v. United States*,

   ___ U.S. ___, 138 S. Ct. 2206 (2018)............................................................. 19, 23

*Davis v. United States*,

   564 U.S. 229 (2011) ..................................................................................... 26, 27

*Gall v. United States*,

   552 U.S. 38 (2007) .............................................................................................16

*Guest v. Leis*,

   255 F.3d 325 (6th Cir. 2001) .............................................................................20

*Illinois v. Gates*,

   462 U.S. 213 (1983) ..........................................................................................30

*Lo-Ji Sales, Inc. v. New York*,

   442 U.S. 319 (1979) ..........................................................................................34

*Nelson v. United States*,

   ___ U.S. ___, 129 S. Ct. 890 (2009) .................................................................36

*Rita v. United States,*

   551 U.S. 338 (2007) ..........................................................................................38

**Table of Citations**

**(Continued)**

**Cases:**                                                                 **Page:**

*Smith v. Maryland,*

    442 U.S. 735 (1979) ................................................................ 19, 20, 23

*Thomas v. Cooper Lighting, Inc.,*

    506 F.3d 1361 (11th Cir. 2007) ........................................................28

*United States v. Amadeo,*

    487 F.3d 823 (11th Cir. 2007) .........................................................38

*United States v. Beckett,*

    369 F. App'x 52 (11th Cir. 2010) ................................................ 20, 23

*United States v. Brundidge,*

    170 F.3d 1350 (11th Cir. 1999) ........................................................30

*United States v. Bush,*

    727 F.3d 1308 (11th Cir. 2013) ........................................................16

*United States v. Butler,*

    102 F.3d 1191 (11th Cir. 1997) ........................................................16

*United States v. Caraballo,*

    593 F.3d 1214 (11th Cir. 2010) ........................................................28

v

## Table of Citations

### (Continued)

**Cases:**                                                                **Page:**

*United States v. Chavez,*

    894 F.3d 593 (4th Cir. 2018) ...............................................................27

*United States v. Christie*,

    624 F.3d 558 (3d Cir. 2010) ................................................................20

*United States v. Cubero*,

    754 F.3d 888 (11th Cir. 2014) .............................................................39

*United States v. Forrester*,

    512 F.3d 500 (9th Cir. 2008) ...............................................................20

*United States v. Foster,*

    209 F. App'x. 942 (11th Cir. 2006) .....................................................41

*United States v. Gonzalez,*

    550 F.3d 1319 (11th Cir. 2008) ...........................................................36

*United States v. Hambrick*,

    225 F.3d 656 (4th Cir. 2000) ...............................................................21

*United States v. Harris,*

    403 U.S. 573, 91 S. Ct. 2075 (1971) ...................................................16

**Table of Citations**

**(Continued)**

<u>**Cases**</u>:                                                                                       <u>**Page**</u>:

*United States v. Huskey,*

    349 F. App'x. 495 (11th Cir. 2009)......................................................40

*United States v. Irey*,

    612 F.3d 1160 (11th Cir. 2010) ...........................................................16

*United States v. Joyner,*

    899 F.3d 1199 (11th Cir. 2018)...........................................................27

*United States v. Leon,*

    468 U.S. 897 (1984) ............................................................... 24, 26, 29

*United States v. Martin*,

    297 F.3d 1308 (11th Cir. 2002)................................................... 30, 34

*United States v. Mejia,*

    82 F.3d 1032 (11th Cir. 1996).............................................................28

*United States v. Miller*,

    24 F.3d 1357 (11th Cir. 1994).............................................................30

*United States v. Miller,*

    425 U.S. 435 (1975) ..........................................................................24

**Table of Citations**

**(Continued)**

<u>**Cases:**</u>                                                                                          <u>**Page:**</u>

*United States v. Oliver,*

    281 F.App'x 898 (11th Cir. 2008)........................................................................40

*United States v. Rosales-Bruno*,

    789 F.3d 1249 (11th Cir. 2015) ........................................................................36

*United States v. Sarras,*

    575 F.3d 119 (11th Cir. 2009) ..........................................................................40

*United States v. Steiger,*

    318 F.3d 1039 (11th Cir. 2003) ........................................................................26

*United States v. Weast*,

    811 F.3d 743 (5th Cir. 2016) ............................................................................20

**<u>Statutes & Other Authorities</u>:**                                            **<u>Page</u>:**

18 U.S.C. § 2251 ..................................................................................2

18 U.S.C. § 2252 ...............................................................................1, 2

18 U.S.C. § 2702 ..................................................................... 17, 25, 28

18 U.S.C. § 3231 ..................................................................................x

18 U.S.C. § 3553 ........................................................................ 2, 18, 36

18 U.S.C. §§ 2701-2711 ......................................................................27

18 U.S.C § 2708 .................................................................................26

28 U.S.C. § 1291 .................................................................................x

Fed. R. App. P. 4 ................................................................................x

Fed. R. App. P. 26.1 ................................................................... c 1 of 2

Fed. R. App. P. 32 .............................................................................43

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Scott Joseph Trader on December 7, 2017. (DE 40). The district court had jurisdiction to enter the judgment pursuant to 18 U.S.C. § 3231. Trader filed a timely notice of appeal on December 18, 2017 (DE 44); <u>see</u> Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and authority to examine Trader's challenges to his sentence pursuant to 18 U.S.C. § 3742(a).

## Statement of the Issues

1.    Whether the district court correctly denied Trader's motion to suppress records obtained from Kik, where Trader lacked a reasonable expectation of privacy in his subscriber information, IP address, and similar descriptive information he voluntarily disclosed.

2.    Whether the district court correctly ruled that probable cause existed to support the issuance of a search warrant for Trader's home and that, in the alternative, the good faith exception to the exclusionary rule applied.

3.    Whether Trader's sentence of life imprisonment is substantively unreasonable.

## Statement of the Case

### 1.  Course of Proceedings and Disposition in the Court Below

On June 13, 2017, a federal grand jury in the Southern District of Florida returned an Indictment that charged appellant Scott Joseph Trader with a variety of offenses stemming from the recovery of child pornography depicting him sexually abusing his two minor daughters. (DE 7). Specifically, Count 1 charged Trader with enticement of a minor to engage in sexual activity, in violation of Title 18, U.S.C. § 2422(b). Count 2 charged Trader with distribution of material containing visual depictions of the sexual exploitations of minors, in violation of Title 18, U.S.C. § 2252(a)(2), (b)(1). Count 3 charged Trader with possession of matter containing

visual depictions of sexual exploitation of minors, in violation of Title 18, U.S.C. §§ 2252(a)(4)(b), (b)(2). Counts 4 and 5 charged Trader with production of material containing visual depictions of sexual exploitation of minors, in violation of Title 18, U.S.C. §§ 2251(a), (e). (DE 7). After the district court denied Trader's motion to suppress (DE 15), he pled guilty to all five counts in the Indictment pursuant to a written conditional plea agreement (DE 21) and factual proffer.[1] (DE 22).

The Presentence Investigation Report calculated Trader's advisory Sentencing Guideline range as life based upon an offense level of 43 and a criminal history category of III. (DE 51: ¶100). Trader did not object to the Guideline range but sought a downward variance under 18 U.S.C. § 3553(a) based upon the following factors: the seriousness of the offense when compared to the Guideline ranges of other serious offenses; Trader's family and work history; and Trader's unlikely recidivism if he is incarcerated until the age of sixty. (DE 34). At sentencing on December 7, 2017, the district court denied Trader's motion for downward variance

---

[1] Trader does not challenge the voluntariness of his plea. In the conditional plea agreement, Trader reserved his right to appeal the district court's order overruling his argument that seizure of his subscriber information (namely an IP address and email address) from a social media company is a search under the Fourth Amendment and that the search warrant in this case was supported by probable cause.

and sentenced him to a within-Guideline sentence of life imprisonment and a life term of supervised release. (DE 56:92).

## 2.    <u>Statement of the Facts</u>[2]

### A.    <u>The Investigation</u>

On May 30, 2017, the Thomasville Police Department in North Carolina received a complaint from the stepfather of a nine-year-old female. ("Victim #1 in Count 1 of the Indictment). (DE 22:2). The stepfather reported the discovery of explicit chat communications between Victim #1 and her chat partner "Scott," later identified as the Appellant, Trader. (DE 22:2). Trader, who was in Florida, was communicating with Victim #1 via a smartphone application called "SayHi." (DE 22:2). The stepfather provided Victim #1's mobile device to law enforcement for examination. (DE 22:2). The Thomasville Police Department requested the assistance of Homeland Security Investigators ("HSI") from the Department of Homeland Security Winston-Salem office to assist in the investigation. (DE 22:2).

HSI's examination of Victim #1's device revealed text communications with the user named "Scott" on the evening of May 30, 2017, and into the morning hours

---

[2] The facts are taken from the sworn Stipulation of Facts and Acknowledgment of Offense Elements In Support Of Guilty Plea filed on September 29, 2017 (DE 22) and from the undisputed facts in the Revised Presentence Investigation Report filed on December 7, 2017. (DE 51).

of May 31, 2017, via the SayHi smartphone application. (DE 22:2). Victim #1 initially provided Trader with pictures in which she was fully clothed and clearly showed she was a preteen female. (DE 22:2). In the chats between Trader and Victim #1, Trader asked Victim #1 how old she was. (DE 22:2). Victim #1 told Trader that she was nine years old, to which Trader replied "Aw, you're very pretty for your age. You look sexy in those pajamas." (DE 22:2).

Trader also solicited nude images from Victim #1. (DE 22:2). In response to Trader's request to send nude images, Victim #1 sent at least one photo of her vagina and one photo of her pulling up her shirt, exposing her nipples. (DE 22:2). In addition to photos, Trader sent Victim #1 a child pornography video using the SayHi Application. (DE 22:2). The video was a 37-second-long depiction of an adult male rubbing his penis on the vagina of a preteen female. (DE 22:2). Trader claimed the preteen female depicted in the video was his daughter. (DE 22:2). In the course of other chats with Victim #1, Trader also sent Victim #1 a video of him masturbating, along with a still image which depicted Trader's face. (DE 22:2).

After HSI examined Victim #1's phone, HSI began investigating "Scott's" identity. (DE 22:2). On the SayHi application "Scott's" user profile had a picture of his face along with an apparent minor female. (DE 22:2). The face depicted in the still image sent to Victim #1 matched Trader's profile image on the SayHi

4

Application. (DE 22:2). Trader's profile also listed his username for another active smartphone application called Kik. (DE 22:2). The Kik profile picture also matched Trader's SayHi profile image, as well as the still images sent to Victim #1. (DE 22:3).

Authorities from HSI decided to send Kik an Emergency Disclosure Request ("EDR") for the subscriber information associated with the username provided in Trader's SayHi profile. (DE 22:2). HSI requested the account holder's name, email address, and recent Internet Protocol ("IP") addresses. (DE 22:2). In response to the EDR, Kik provided the email account of "strader0227@yahoo.com" which was associated with the user name that Trader used to communicate with Victim #1. (DE 22:2). Kik also provided a login history, indicating there were logons to the account from IP address 76.110.46.234 starting on May 1, 2017, through May 31, 2017. (DE 22:2). The IP address Trader used was registered to Comcast. HSI agents then served an EDR on Comcast requesting subscriber information associated with the IP address. (DE 22:2). Comcast complied with the request and responded by identifying the subscriber's home address of 1189 SW Edinburgh Dr., Port St. Lucie, Florida. (DE 22:2). A check of the Florida Department of Highway Safety and Motor Vehicle (DHSMV) records indicated that Trader listed his mailing address as the same address registered to the IP address used by "Scott" in his chat communications with

5

Victim #1. (DE 22:2). In addition, the photograph used on Trader's driver's license matched both the photo used in the "Scott" user profile on the SayHi application and the transmitted images to Victim #1. (DE 22:3).

### B.    <u>Search Warrant</u>[3]

On May 31, 2017, Special Agent Brian Ray of the Department of Homeland Security conducted a property records search for 1189 SW Edinburgh Drive, Port St. Lucie, Florida, on the St. Lucie County Property Appraiser's website. (DE 14-1:8-9).  According to the website, 1189 SW Edinburgh Drive, Port St. Lucie, Florida, was purchased by Leon Bonanno and Shelly Trader-Bonanno on June 16, 2016. (DE 14-1:9). Shelley Trader-Bonanno, based on the age listed on her DHSMV records, appeared to be Trader's mother. (DE 14-1:9). Agent Ray learned during the course of the investigation that Trader did not update his residential address of 4286 SW Carl Street, Port St. Lucie, Florida, which was also Shelly Trader-Bonanno's address, until the purchase of the 1189 SW Edinburgh Drive property. (DE 14-1:9).

Special Agent Ray conducted a criminal history record check which revealed that in 2012, Trader was arrested by the Port St. Lucie Police Department for Promoting a Sexual Performance by a Child, Lewd Behavior, and Possession of

---

[3] Facts related to the search warrant are taken from the search warrant affidavit. (DE 14-1).

Child Pornography. (DE 14-1:19). Those charges were dropped, and Trader was convicted for felony child neglect. (DE 14-1:19). In December 2016, Trader was arrested for lewd behavior – molesting a victim less than 12 years of age. (DE 14-1:19).

On May 31, 2017, surveillance was conducted on the address listed by Trader as his mailing address of 1189 SW Edinburgh Drive, Port St. Lucie, Florida. HSI agents, and Fort Pierce authorities conducted a brief surveillance of the home. (DE 14-1:20). Authorities witnessed a female woman and a female child, approximately two years of age, entering the residence. (DE 14-1:20).

On May 31, 2017, HSI obtained a federal search warrant from a magistrate judge authorizing the search of the residence located at 1189 SW Edinburgh Drive, Port St. Lucie, Florida. (DE 14-1). In the search warrant affidavit, HSI detailed how it served an EDR on both Kik and Comcast. In that EDR, the agent in charge of the investigation, Cory E. Brant, asserted that the emergency outlined in the request concerned a situation "involving death or serious physical injury." (DE 14-1). Agent Brant stated: "The Kik user identified below is believed to be actively molesting and sexually exploiting a minor in his custody and/or control. This subject is also involved in the sexual exploitation of other minors." (DE 14-1:10). The search

7

warrant authorized the search of the target residence to include the recovery of computers, smartphones, and other electronic storage devices. (DE 14-1).

## C.    Search Warrant Execution

The search warrant executed on Trader's house led to the discovery of a number of electronic storage devices that contained child pornography including a Samsung SM-G920T smartphone, a LG G6 smartphone, a 16GB San Disk Secure Digital (SD) card, a Western Digital My Passport Ultra external hard drive, a Samsung SGH-T999 smartphone, nine media storage cards (consisting of two SD cards, four micro SD cards, and three SIM cards); and a Toshiba C655d-S5202 Laptop Computer. (DE 22:3). These items had been concealed behind a board in Trader's closet. (DE 22:3).

The items recovered from Trader's bedroom were forensically examined and revealed a vast array of child pornography. Some of the child pornography was produced by Trader, some had been downloaded from the internet by Trader and some had been sent to Trader by another person. (DE 22:4). One of the SD cards contained images and videos of Trader sexually abusing his two minor daughters. (identified in the Indictment as Victim #2 and Victim #3). (DE 22:3-4). Trader sexually abused Victim #2 and Victim #3 and recorded it during the time frames alleged in Count Four and Five of the Indictment. (DE 22:3-4).  The SD cards

8

recovered appeared to be used as additional storage for his phone, with folders for various applications. (DE 22:3). In one of the folders for the Kik application, authorities located an image dated October 5, 2016, which showed Trader seated on a couch with his pants pulled down, exposing his erect penis, with Victim #2 hugging Trader and looking at the camera as Trader took a "selfie" style photograph of Victim #2 mere inches away from his erect penis. (DE 22:4). Victim #2 was two years old at the time the image was taken. (PSR 51:9). The folder also contained videos dated September 9, 2016, of Trader digitally penetrating the vagina of Victim #3, his preteen daughter. (PSR 51:15).

Additional child pornography was located on the Western Digital hard drive which contained multiple folders with over a thousand images and videos of child pornography. (DE 22:3). Trader had one of the folders labeled, "pics of me with kids." (DE 22:4). There were numerous images of Trader engaged in explicit sexual conduct with "Victim #2" who was two years old at the time. (DE 22:4). Some of the images depicted "Victim #2's" mouth on Trader's penis. (DE 22:4). Preliminary forensic analysis of SD cards and other seized electronic storage devices and media revealed the following within the time frame as alleged in the indictment: an SD card with a folder named "Sammie," (a reference to "Victim 3" in the Indictment); fully nude photos of Trader; photos and videos of Trader touching and digitally

9

penetrating and manipulating the vagina of "Victim 3"; photos and videos of Trader pulling back underwear on "Victim 3"; photos and videos of Trader ejaculating next to "Victim 3's" head and digitally penetrating her vagina; videos of Trader telling "Victim 2" who was two years old at the time, to kiss his penis which she did; photos and videos of Trader's erect penis in close proximity to "Victim #2's" vagina; photos of "Victim 2's" mouth touching Trader's penis in a folder entitled "pics of me with kids"; and thousands of photos and videos of child pornography downloaded from the internet which included the sexual abuse of infants and toddlers. (PSR 51:¶17). In addition to photos and videos, HSI authorities also recovered explicit online chats between Trader and other individuals who were involved in the exchange of child pornography. (PSR 51:¶18).

### D.   <u>Motion to Suppress</u>

Following his Indictment, Trader filed a Motion to Suppress Illegally Obtained Evidence. (DE 13). Trader moved for suppression of the evidence on two grounds: (1) the Government had obtained the Kik and IP Address records without a warrant, and (2) the affidavit in support of the search warrant for his home did not provide sufficient probable cause. (DE 13). The Government filed a response arguing that law enforcement can obtain subscriber information from various Internet service providers merely with a subpoena and that the facts contained in the

search warrant affidavit clearly supported a probable cause finding. (DE 14:2). The motion to suppress was denied on both grounds without an evidentiary hearing as the district court found first, that the Government's receipt of Trader's subscriber information and IP address from Kik was neither a search under the Fourth Amendment, nor a hypothetical violation of the Electronic Communications Privacy Act (DE 15:6, 9); and second, that there were sufficient facts contained in the search warrant affidavit for Trader's home to establish a nexus between Trader's criminal activity and the residence to amount to probable cause for a search warrant. (DE 15:10-12**).**

###    E.    Facts Pertaining to Trader's Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSR")[4] using the 2016 United States Sentencing Commission Guideline Manual. (DE 51 (hereafter PSI 51)). The Probation Officer assigned Trader a base offense level of 32 under USSG § 2G2.1(a) because Trader was convicted of an offense involving production of material containing visual depictions of sexual exploitation of minors. (PSR 51:¶42). Trader received the following enhancements: four levels under USSG § 2G2.1(b)(2) because the offense involved a minor who had not attained the age of 12 years (PSR 51:¶43); two levels under USSG

---

[4] All references are to the Revised PSR, dated December 7, 2017. (DE 51).

§ 2G2.1(b)(2) because the offense involved the commission of a sexual act or sexual contact (PSR 51:¶44); two levels under USSG § 2G2.1(b)(3) because Trader knowingly engaged in distribution (PSR 51:¶45); four levels under USSG § 2G2.1(b)(4) because the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) an infant or toddler (PSR 51:¶46); and two levels under USSG § 2G2.1(b)(5) because Trader was a parent of a minor involved in the offense. (PSR 51:¶47).

Those computations yielded an adjusted offense level of 46. (PSR 51:¶51). The Probation Officer then deducted three levels under USSG §§ 3E1.1(a) and (b) for Trader's timely acceptance of responsibility. (PSR 51:¶53). Trader had a criminal history category of III and an adjusted offense level of 43 which resulted in an advisory Guideline sentencing range of life. (PSR 51:¶100).

Trader filed objections to the PSR (DE 30), none of which are relevant to this appeal. Trader also moved for a downward variance. (DE 34). Trader argued that the district court should vary downward from a life sentence based upon the following: the seriousness of the offense when compared to the Guideline ranges of other serious offenses; Trader's family and work history; and Trader's unlikely recidivism if he is incarcerated until the age of sixty. (DE 34).

On November 30, 2017, the Government filed a sentencing memorandum in support of a life sentence. (DE 33). The Government recommended that Trader be sentenced to life in prison because his egregious conduct ran the "gamut of child exploitation categories: actual sexual abuse, production of child pornography; online distribution and receipt; online coercion and enticement to produce; and possession and collection of child pornography." (DE 33:1). The Government emphasized that Trader not only produced large amounts of child pornography, but also distributed it over the internet to adults, as well as to minor victims. (DE 33:2). Such images included Trader's sexual abuse of his own two daughters who had been entrusted to his care. (DE 33:1). The Government stressed in its Memorandum the need for a within-Guideline range sentence of life, as Trader continued to collect, produce, and distribute child pornography despite having been arrested at least two separate times on four state criminal cases involving child pornography and child abuse, even while on bond on one of those cases and while under the supervision of Department of Children and Families. (DE 33:1).

The district court held a sentencing hearing on December 7, 2017. (DE 56). The district court reviewed and adopted the revised PSR, as well as the plea agreement, the Government's Sentencing Memorandum, Trader's forensic

psychiatric report, a victim impact statement by one of the victim's mother, and Trader's motion for downward variance. (DE 56:3-4).

During the sentencing hearing the Government presented the testimony of Brian Ray, a Homeland Security Investigator who testified as a computer forensic expert. (DE 56:9). HSI Ray testified about a number of videos showing Trader sexually abusing his minor daughters, Victim #2 and Victim #3. The district court was able to observe the following: a 15-second-video showing Trader's youngest child, Victim #2, masturbating him and kissing his penis, while he had her say, "Hi Ash." (Ash was an adult for whom had Trader created and exchanged child pornography via the Internet) (DE 56:12); a 14-second video Trader kept in his home, showing Victim #2 nuzzling Trader's penis with her face and her hands while Trader encouraged her with the words, "good girl" (DE 56:13); and a 20-second video recovered from Trader's home showing Victim #2 lying on the bed with Trader as Trader inserted his penis in her vaginal opening. (DE 56:15).

The district court also viewed videos recovered from the search of Trader's home depicting Trader's sexual abuse of his other daughter, Victim #3. The Government showed the district court a 14-second-video depicting Victim #3 asleep in her bed while Trader inserted his fingers in her vagina. (DE 56:17). The district court was also shown a 30-second video which depicted a toddler suspended by her

legs on a bed with a woman who was aggressively inserting a dildo into the child's vagina. (DE 56:34). HSI Ray also testified as to the hundreds of child pornography images that Trader had in his home. The district court heard testimony of how Trader engaged in sexually explicit online communications with at least 100 minor victims and enticed and coerced at least 44 of them to produce and send him child pornography over the Internet, with victims being as young as eight years old. (DE 56:20).

Trader presented the testimony of Dr. Michael Bannon who testified as an expert in forensic psychology. Dr. Brannon testified that he performed a sex offender risk assessment on Trader and found that if Trader was incarcerated until the age of 60, "he poses a low risk at that point or below average risk," of reoffending.  (DE 56:56).

The district court, after considering the arguments of counsel, the PSR, the advisory Guidelines, and the § 3553(a) factors, sentenced Trader to life in prison and a life term of supervised release. The district court indicated it had "no confidence that he will stop this behavior because he continued it while on bond from a state court proceeding and even while he was being evaluated by medical professionals, who he was apparently able to fool into believing he didn't present a threat to his

children at the same time he was committing crimes against those children." (DE 56:92). Trader preserved his objections. (DE 56:94).

**3.    <u>Standards of Review</u>**

This Court reviews a district court's denial of a motion to suppress evidence for clear error as to factual findings and *de novo* as to its application of the law. *United States v. Bush*, 727 F.3d 1308 (11th Cir. 2013).

Whether a search warrant affidavit provides sufficient facts to establish probable cause is reviewed *de novo. United States v. Butler,* 102 F.3d 1191, 1198 (11th Cir. 1997). A finding of probable cause, however, merits great deference by the reviewing court. *United States v. Harris,* 403 U.S. 573, 589, 91 S. Ct. 2075, 2085 (1971).

This Court reviews the reasonableness of a sentence under "a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (en banc). The Court accepts the district court's underlying factual findings unless they are clearly erroneous. *Irey*, 612 F.3d at 1190.

<b>Summary of the Argument</b>

The district court correctly denied both grounds underlying Trader's motion to suppress. First, the district court properly denied Trader's motion to suppress the

16

records obtained from Kik because Trader lacked a reasonable expectation of privacy in his subscriber information, IP address and similar descriptive information that he disclosed to third parties to facilitate Internet service. All federal courts that have addressed this issue uniformly have held that under the third-party doctrine, computer users lack a reasonable expectation of privacy in their IP addresses, subscriber information, and similar descriptive information that they disclose to facilitate Internet service. Therefore, the procurement of the records from Kik and Comcast did not constitute a search that would trigger any Fourth Amendment protections. Further, even if this Court found that an unreasonable search had taken place, the exclusionary rule does not bar the use of evidence obtained by Homeland Security Investigators acting in reasonable reliance upon an emergency disclosure request pursuant to the provisions in the Electronic Communications Privacy Act Title 18, U.S.C. §2702(c)(4).

Second, the district court correctly denied Trader's motion to suppress because the affidavit in support of the warrant more than sufficiently demonstrated probable cause to believe that evidence of Trader's criminal activity with minors would be located at the residence listed in the affidavit. Additionally, under the good faith exception, the HSI and local authorities were able to rely on the warrant even

17

if the affidavit had been defective. Thus, under any scenario, the evidence obtained from the search of the residence where Trader was located was admissible.

Trader also claims that his life sentence was substantively unreasonable, but that claim is refuted by the undeniable evidence and the record in his case. The district court thoroughly explained its sentencing rationale for imposing a sentence recommended by the correctly-calculated sentencing Guidelines range. Trader admitted to the horrific sexual abuse of his children, the production of his own child pornography, and his accumulation and sharing of hundreds of images of other children in the form of still images and videos. Considering all of the 18 U.S.C. § 3553(a) factors, the advisory Guidelines, arguments and motions of counsel, the district court operated well within its discretion to reject Trader's motion for a downward variance. Trader's sentence is substantively reasonable and should be affirmed.

## Argument

**I.    The District Court Correctly Denied Trader's Motion to Suppress the Records Obtained from Kik because Trader Lacked a Reasonable Expectation of Privacy in His Subscriber Information, IP Address and Similar Descriptive Information He Disclosed to Third Parties to Facilitate Internet Service.**

Trader argues that the district court erred when it held that he lacked a reasonable expectation of privacy in his Kik subscriber records and denied his

motion to suppress. In making this argument, Trader relies heavily on the Supreme

Court's recent holding in *Carpenter v. United States*, \_\_\_\_U.S.\_\_\_\_\_, 138 S. Ct.

2206 (2018). He argues that the rationale enunciated in *Carpenter*, which found that

the Government must generally obtain a search warrant supported by probable cause

before acquiring cell-site location information from a wireless carrier, bestows an

objective expectation of privacy in such information as subscriber information and

IP addresses. Contrary to this argument, the district court correctly found that HSI's

procurement of the Kik records did not constitute a search, and this Court should

reject Trader's arguments because they are unsupported by the law.

The Fourth Amendment guarantees "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV. "[T]he application of the Fourth Amendment

depends on whether the person invoking its protection can claim a 'justifiable,'

'reasonable,' or a legitimate expectation of privacy' that has been invaded by

government action." *Smith v. Maryland,* 442 U.S. 735, 740 (1979). Under the

Supreme Court's third-party doctrine, an individual has no claim under the Fourth

Amendment to resist the production of business records held by a third party. *Id.*

The third-party doctrine dictates that when an individual voluntarily conveys

information to a third party, he or she has no reasonable expectation of privacy in

19

that information, and therefore, Fourth Amendment protections do not apply. *Id.* at 743-46 (holding that individual had no reasonable expectation of privacy in records of phone numbers dialed held by phone company). Federal courts have uniformly applied the third-party doctrine to hold that individuals have no reasonable expectation of privacy in their email address or Internet Protocol ("IP") addresses when they are voluntarily disclosed to third parties. *United States v. Beckett*, 369 F. App'x 52, 56 (11th Cir. 2010) (unpublished) (holding that defendant could not have had a reasonable expectation in the identifying information obtained from the internet service providers and phone companies, including an IP address); *United States v. Weast*, 811 F.3d 743, 748 (5th Cir. 2016) (holding that the Fourth Amendment does not protect IP addresses or peer-to-peer shared files); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (holding that "Like telephone numbers [in the context of pen registers], which provide instructions to the 'switching equipment that processed those numbers,' e-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party servers."); *United States v. Christie*, 624 F.3d 558, 573-74 (3d Cir. 2010) (holding that, "similarly, no reasonable expectation of privacy exists in an IP address, because that information is also conveyed to and, indeed, from third parties, including ISPs."); *Guest v. Leis*,

255 F.3d 325, 336 (6th Cir. 2001) (holding, in a non-criminal context, that "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person - the system operator"); *United States v. Hambrick*, 225 F.3d 656 (4th Cir. 2000) (unpublished) (holding that there was no legitimate expectation of privacy in noncontent customer information provided to an internet service provider by one of its customers).

Trader voluntarily conveyed his subscriber information to Kik to facilitate his criminal activity of child pornography and child exploitation. Trader could not have had a reasonable expectation of privacy in the information that HSI obtained from Kik which included his subscriber information and IP address. An IP address provides an identity to a networked device. *See, What Is An IP Address And What Can It Reveal About You,* Cale Weissman, Business Insider, 2015, http://www.businessinsider.com/ip-address-what-they-can-reveal-about-you-2015-5. Similar to a home or business address supplying that specific physical location with an identifiable address, devices on a network are differentiated from one another through IP addresses. *Id.* The information contained in the Kik records consisted of identifying information transmitted during internet usage that is necessary for Kik and the Internet provider to perform their services. It was

21

unreasonable for Trader to have believed that Kik would keep such information private.

Trader complains that the Government was able to monitor him throughout a continuous 30-day period by virtue of the information Kik released, which included his subscriber information, email address, and IP address. The Kik records in the instant case showed that Trader had logged into the Kik account with the "strader0227@yahoo.com" email account starting May 1, 2017 through May 31, 2017. (DE 22:2). Based on the information provided, the government was able to determine that Trader logged into the Kik application from the residence registered to his mother's Comcast IP address, but was unable to determine anything else about his movements or the contents of his communications during the logons. This was appropriate. As this Court's unpublished *Beckett* case explained, individuals do not have a reasonable expectation of privacy in subscriber identification information given to Internet services providers and telephone companies, within the scope of the Fourth Amendment:

> Beckett could not have had a reasonable expectation of privacy in the information that was obtained from the ISPs and the phone companies. The investigators did not recover any information related to content. Rather, the information consisted of the identifying information transmitted during internet usage and phone calls that is necessary for the ISPs and phone companies to perform their services. It is unreasonable for Beckett to have been unaware that such information was being transmitted to the ISPs and phone companies

22

and so he "assumed the risk that the company would reveal to police the [information]." <u>Smith</u>, 442 U.S. at 744, 99 S.Ct. at 2582 ("When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business."). Accordingly, we affirm in this respect.

*Beckett,* 369 F.App'x. at 56 (emphasis added).

Trader relies primarily on *Carpenter v. United States*, ____U.S.____, 138 S.Ct. 2206 (2018), in which the Supreme Court concluded that, "[t]he Government's acquisition of the cell-site records was a search within the meaning of the Fourth Amendment," *id.* at 2220, and that "the Government must generally obtain a warrant supported by probable cause before acquiring such records," *id.* at 2221. Trader unsuccessfully tries to extend *Carpenter's* holding to cover records such as those obtained in this case. The Supreme Court was clear in what it held and what it did not. The Supreme Court specifically noted that its decision was a narrow one. It stated that, "It does not express a view on matters not before the Court; does not disturb the application of *Smith* and *Miller* or call into question surveillance techniques and tools, such as security cameras; does not address other business records that might incidentally reveal location information; and does not consider other collection techniques involving foreign affairs or national security."[5] *Id.* at

---

[5] *Smith v. Maryland,* 442 U.S. 735 (1979) (Installation and use of pen register by telephone company at police request did not constitute "search" within meaning of

23

2221. The records in this case neither contained information related to communications Trader engaged in nor provided continuous location information regarding Trader's whereabouts. Thus, *Carpenter's* holding does not extend to records such as the ones in dispute in this case.

In sum, Trader had no reasonable expectation of privacy in the Kik records provided to HSI. Therefore, the Government did not engage in a Fourth Amendment search. Moreover, even if this Court finds that the procurement of the records amounted to a search, the HLS investigators acted in good faith and therefore, under the well-established *Leon*[6] exception to the warrant requirement, the district court's denial of the motion to suppress did not constitute reversible error.

---

Fourth Amendment, and telephone numbers obtained by such methods were therefore properly introduced in evidence in defendant's prosecution for robbery even though pen register was installed without search warrant.); *United States v. Miller,* 425 U.S. 435 (1975) (Bank depositor had no protectable Fourth Amendment interest in bank records, consisting of microfilms or checks, deposit slips and other records relating to his accounts at two banks, maintained pursuant to Bank Secrecy Act and obtained by allegedly defective subpoenas, and thus trial court did not err in denying motion to suppress subpoenaed documents, regardless of validity of the subpoenas.)

[6] *United States v. Leon,* 468 U.S. 897 (1984) (holding that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause.).

HSI complied with the Stored Communications Act ("SCA") (codified at 18 U.S.C. Chapter §§ 2701-2712) which was enacted as Title II of the Electronic Communications Privacy Act of 1986 ("ECPA") and addresses the voluntary and compelled disclosure of stored wire and electronic communications and transactional records held by third-party Internet Service Providers (ISPs). The SCA prohibits "a provider of a remote computing service or electronic communication service to the public [from] knowingly divulging a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity." 18 U.S.C. § 2702(a)(3). However, exceptions exist to this general prohibition. The SCA permits disclosure, "if the provider in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." 18 U.S.C. § 2702(c)(4).

In the instant case, Kik responded to an emergency disclosure request from HSI. (DE 14-1). As the provider of the records, Kik believed an emergency did exist and provided the requested information.  Title 18, U.S.C. § 2702(c)(4) of the SCA gave Kik the authority to provide the records. An emergency existed in this case because Trader was actively sexually abusing his two minor daughters and

25

distributing images of that abuse via the Internet. The provider had a good faith basis to believe that the emergency warranted production of Trader's records.

Even if somehow there was a violation of the SCA, the statute specifically states that suppression is not a remedy. 18 U.S.C § 2708 ("The [damages] remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter). This Court has agreed. *United States v. Steiger,* 318 F.3d 1039, 1051 (11th Cir. 2003) (holding that suppression is not a remedy for a ECPA violation). The Government properly followed the criteria delineated in the SCA and even if the Court found a violation, suppression is not a remedy.

Alternatively, if this Court finds that the procurement of the Kik records amounted to a search requiring a warrant, "suppression of the evidence is not an automatic consequence of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229 (2011). The exclusionary rule's "sole purpose ... is to deter future Fourth Amendment violations." *Id.* at 236-237. Thus, when investigators "act with an objectively 'reasonable good-faith belief' that their conduct is lawful," the exclusionary rule will not apply. *Id.* at 238 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Objectively reasonable good faith includes "searches conducted in reasonable reliance on subsequently invalidated statutes." *Id.* at 239.

26

This Court's recent opinion in *United States v. Joyner*, 899 F.3d 1199 (11th Cir. 2018), reaffirms the well-established *Leon* exception with regard to searches done in reliance on and in conformity with statutes. In Joyner, the defendant was charged with robbing several CVS and Walgreen drugstores in Atlanta during May and June of 2015. Prior to trial, the district court denied Joyner's motion to suppress cell site data obtained from wireless carriers without a search warrant. Although this violated *Carpenter*, this Court found that the Government had complied with the existing requirements of the SCA, 18 U.S.C. §§ 2701-2711, in obtaining the orders to compel cell site records. Thus, this Court found that under the *Leon* exception to the warrant requirement, the district court's denial of the motion to suppress was proper and did not warrant reversal. *United States v. Joyner*, 899 F.3d 1199, 1202 (11th Cir. 2018). Other circuit courts post *Carpenter* also have held the *Leon* good faith exception to apply to "searches conducted in reasonable reliance on subsequently invalidated statutes." *United States v. Chavez,* 894 F.3d 593 (4th Cir. 2018) (quoting *Davis v. United States*, 564 U.S. 229, 236-37 (2011)).

Trader claims that because the Government failed to raise the *Leon* good faith exception in its response to Trader's motion to suppress the Kik records, the Government should be precluded from raising it now. Trader's claim is meritless. HSI acted in good faith and in reliance on the criteria outlined in the EDR and in

27

compliance with 18 U.S.C. § 2702(c)(4). At the time HSI obtained the Kik records, no federal statute or binding appellate precedent was in place that required HSI to obtain a warrant. Therefore, Trader's argument regarding the Government's failure of raising good faith in the district court is unsound as the Government was not required to obtain a warrant.

Despite the fact that HSI was not required to obtain a warrant for the Kik records, when applying the law to the facts while reviewing a motion to suppress, it is well-settled that this Court may affirm the district court's judgment on any basis supported in the record. *United States v. Mejia,* 82 F.3d 1032, 1035 (11th Cir. 1996); *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record whether or not that ground was relied upon or even considered by the court below."); *United States v. Caraballo,* 593 F.3d 1214, 1222 (11th Cir. 2010) (holding that Court may affirm he denial of a motion to suppress on any ground supported by the record).

Trader does not, and cannot, deny that investigators in this case reasonably relied on the SCA when it served its emergency disclosure request on Kik. There has been no allegation that the Government misled the Kik providers when they requested the information associated with an account involved in the exploitation of children.

In sum, Trader had no reasonable expectation of privacy in the subscriber information provided by Kik. Under the third party doctrine the procurement of those records did not constitute a search that would trigger Fourth Amendment protections. And even if the Court determines a search did in fact take place, the HSI investigators acted in good faith and in reliance upon the provisions provided in the SCA § 2702(c)(4). The district court was therefore correct in denying Trader's motion to suppress on this ground.

## II. The District Court Did Not Err by Denying Trader's Motion to Suppress Evidence from His Home because the Affidavit Supporting the Search Warrant Established Probable Cause.

Trader reprises his contention in the district court that the search warrant in this case was invalid in that it "failed to show probable cause on its face." (Br. at 22). The district court denied Trader's motion to suppress after finding that the information in the warrant supported a finding of probable cause. The district court further found that, assuming probable cause was lacking, the good-faith exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897 (1984) applied. Under either theory, the district court did not err in holding that the evidence should not be excluded.

"[N]o warrants shall issue, but upon probable cause." U.S.Const. amend. IV. Probable cause is a flexible, common-sense standard requiring merely that all

29

available facts and circumstances permit a man of reasonable caution to believe that a particular place may contain evidence of a crime. To establish probable cause to search a home, the evidence "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). When evaluating a search warrant affidavit, the issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hyper technical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [judges] in their probable cause determinations." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994).

The district court was correct in denying Trader's motion to suppress evidence as the information in the warrant was supported by ample probable cause. First, the affidavit connects Trader with criminal activity, primarily, the sexting conversation he had with Victim #1 who Trader knew was nine years old at the time. (DE 22:2). The warrant outlined that Trader had sent an image of himself to Victim #1 along with a 37-second-video in which Trader was masturbating. The affidavit detailed the following:

> HSI Winston-Salem's examination of Victim #1's device revealed text communications with "Scott" on the evening of May 30, 2017, using the "Say Hi." Application. Victim #1 provided Trader pictures which clearly indicated she was a preteen female. Trader requested nude images from Victim #1 and transmitted a child pornography video to Victim #1. "Scott" claimed the female depicted in the video was his daughter. "Scott" also sent a masturbation video to the victim, along with a still image which depicted "Scott's" face.

(DE 14-1:7-8).

The affidavit in support of the search warrant also explained that the image of the person's face that was sent to Victim #1 matched the person depicted in Trader's driver's license photograph. (DE 14-1:18). Trader also called himself by his first name, "Scott." Trader's driver's license image also matched the photograph on the user profile of "Scott" for the SayHi application. (DE 14-1:18). The same SayHi user profile also listed "Scott's" username for another active smartphone application, Kik. An examination of the Kik profile also had a photo of "Scott" which matched

Trader's photo on his driver's license and the image sent to Victim #1. (DE 14-1:14). It was the user profile of "Scott" that Trader used to send explicit messages, photos, and videos to Victim #1. (DE 14-1:13).

The facts in the affidavit provided probable cause to believe that Trader was engaged in the transmission of child pornography, since a still image of Trader's face, along with child pornography, was sent to Victim #1 by an individual using both the SayHi and Kik applications that had Trader's photograph as the application profile pictures. In addition, Trader had previously been arrested twice for offenses related to child pornography and molestation, in 2012 and again in December 2016. (DE 22:2). This information connected Trader to criminal activity with minors.

The search warrant affidavit further established a link between Trader, the crime, and the residence that was searched. In response to the EDR, the IP address (76.110.46.234) belonging to the device using Trader's Kik application on the same date of the SayHi sexting conversation with Victim #1, was registered by Comcast as a subscriber residing at the residence that was ultimately searched. This residence was the same residence listed by Trader as his mailing address in his Florida Department of Motor Vehicle records. The same IP address (76.11.46.234) was used by Trader on the Kik application starting May 1, 2017, through May 31, 2017, during which the explicit and criminal communications with Victim #1 occurred. The

32

connection between the criminal activity involving Trader and his connection to the residence where the IP address was registered established a fair probability that Trader, and evidence of his crimes would be found at that residence.

Trader's claim is that there was no evidence in the affidavit that Trader's residence or the IP address registered to that address was connected to any criminal activity. (Br. at 26). Contrary to this claim, the Government listed sufficient facts in its affidavit to connect Trader's criminal activity to the residence that was ultimately searched. As the Order denying the motion to suppress outlined, the affidavit provided that the IP address 76.110.46.234 was the one from which Trader logged onto his Kik account on the same date that Trader had the sexually explicit conversation with Victim #1 on the "Say Hi" application, using the name of "Scott." (DE 15:11). The affidavit in support of the search warrant indicated that the target address was also the same address that Trader listed as his mailing address with the Florida DHSMV. (DE 14-1:9). Further, the same photograph used by Trader for his Florida driver's license matched the person whose image was sent to Victim #1 in furtherance of his criminal activity with a minor. The facts as outlined in the affidavit amount to more than just a "hunch." Given all the circumstance set forth in the affidavit, the district court's assessment regarding the probable cause was correct.

33

Under the totality of the circumstances, the affidavit indicated a fair probability that contraband or evidence of a crime would have been found in Trader's residence.

Alternatively, if this Court were to determine that the search warrant affidavit lacked probable cause, the *Leon* good faith exception to the exclusionary rule would bar exclusion of the challenged evidence. This Court has observed that "[t]he purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when officers engage in 'objectively reasonable law enforcement activity' and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002). The *Leon* good faith exception applies in all but four narrow circumstances: (1) the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the judge wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979); (3) the affidavit supporting the warrant is so lacking in indicia of probable cause that official belief in its existence would be entirely unreasonable; and (4) the warrant is so facially deficient -- i.e., it fails to particularize the place to be searched or the items to be seized -- that the executing officers cannot reasonably presume it to be valid. *Martin*, 297 F.3d at 1313.

34

Trader has not suggested that the search warrant affidavit contained any false information nor has Trader suggested that the magistrate judge who issued the warrant had wholly abandoned his judicial role. Furthermore, Trader has not suggested that the warrant was so facially deficient that the executing officers could not presume the warrant to be valid. Thus, the issue on appeal, as at the suppression hearing, concerns the third exception to the *Leon* warrant rule -- that the "warrant affidavit was so lacking in probable cause that it was unreasonable for the officers to assume it was valid." (Br. at 25).

As the district court concluded, the search warrant affidavit was not so lacking in indicia of probable cause as to render a reasonably well-trained officer's belief in the existence of probable cause entirely unreasonable. The district court found sufficient probable cause connecting Trader's residence to Trader's criminal activity because: (1) the residence was listed as Trader's mailing address with Florida DHSMV; (2) Trader exchanged child pornography using the IP address associated with his Kik account and his residence; and (3) Trader used his real first name, Scott, to chat on SayHi. (DE 15:12). It was these facts in the search warrant affidavit that contained sufficient indicia of probable cause to enable a reasonable officer executing the warrant to believe that the warrant was valid. The HSI officers acted in good faith obtaining a search warrant from a magistrate and acted within its scope.

35

Thus, the denial of Trader's motion to suppress on this ground was proper and should be affirmed.

## III.    Trader's Sentence of Life in Prison is Not Substantively Unreasonable.

Trader argues that his sentence is substantively unreasonable because the district court failed to adequately consider the Title 18, U.S.C. § 3553(a) factors in light of the mitigating factors that he had discussed at sentencing and improperly gave too much weight to the Sentencing Guideline range. (Br. at 27). The record in the district court rebuts Trader's claims. The district court did not abuse its discretion when it imposed a within-Guideline range life sentence and appropriately weighed the 18 U.S.C. § 3553(a) factors in doing so.

The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts. *United States v. Rosales-Bruno*, 789 F.3d 1249 (11th Cir. 2015). Reviewing the substantive reasonableness of a sentence requires "examining the totality of the circumstances, including an inquiry into whether the statutory factors in Section 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Trader first argues that the district court presumed the Guidelines to be reasonable. While it is true that it would be error for a district court to apply a

36

presumption of reasonableness to a Guideline sentence, no such presumption was applied in this case. *See Nelson v. United States*, ___ U.S. ___, 129 S. Ct. 890, 891 (2009) (district court "may not presume that the Guideline range is reasonable"). Both the district court, Trader, and the Government all agreed the offense level to be 43, the criminal history category to be III and the advisory Guideline to be life. (DE 56:91). In determining what the appropriate sentence would be, the district court considered the advisory Guidelines, the statutory factors, and the arguments of counsel, in addition to the filings by both parties. (DE 56:91). The district court expressly discussed some of the factors enumerated in § 3553(a). (DE 56:91). The record indicates that the district court gave consideration to multiple § 3553(a) factors, such as the serious nature of Trader's offense, Trader's history and characteristics and  the need to protect the public from further crimes committed by Trader. (DE 56:91). In addition, the district court heard from victims' parents, Trader's psychologist who evaluated his potential to recidivate, and Trader's own mother. (DE 56:45-78). Despite this, the district court believed a life sentence was appropriate.

The district court's explanation of its sentence demonstrates, not a presumption of reasonableness, but its adherence to the instructions of the Supreme Court, which has "told judges that they need not provide extensive explanations for

within-Guidelines sentences because '[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning.'" *Rita v. United States,* 551 U.S. 338 (2007).

Trader also claims the district court did not give sufficient weight to the mitigating factors he presented in arriving at a sentence. (Br. at 28). Trader filed a motion for a downward variance citing among other things Trader's work history and a psychological evaluation which concluded that Trader's risk of reoffending would "be below average at the age of 60." (DE 34:5). The district court specifically noted that, "it had no confidence that he will stop his behavior because he continued it while on bond from a state court proceeding and even while he was being evaluated by medical professionals he was, apparently, able to fool into believing he didn't present a threat to his children at the same time he was committing crimes against those children." (DE 56:92). The fact that the district court was not persuaded by Trader's mitigation in the form of his likely recidivism at age 60 or by the fact that other courts may have varied downward in other child pornography possession cases does not mean that the court committed a procedural error or that it abused its discretion by imposing a within-Guideline range sentence. *United States v. Amadeo*, 487 F.3d 823 (11th Cir. 2007). The district court properly calculated Trader's Guideline range, treated the Guideline range as advisory, recognized its authority to

vary downward, listened to the arguments of both counsel, considered the § 3553(a) factors and adequately explained the sentence it imposed.

Trader also claims that the district court should have been more skeptical of the applicable Guideline, U.S.S.G. § 2G2.2, because it recommends sentences that are presumptively unreasonable. Trader argues that current child pornography guidelines fail to promote proportionality. (Br. at 31). Trader relies on the United States Sentencing Commission's 2012 Report to the Congress: Federal Child Pornography Offenses, which recommends revisions to U.S.S.G. § 2G2.2. The 2012 Report addressed the current Guideline for non-production offenses such as possession, receipt, transportation, and distribution of child pornography. *See* United States Sentencing Commission, *Report to the Congress Federal Child Pornography Offenses*, 2012. Nevertheless, the 2012 Report did not alter the district court's consideration of the Guidelines or typical sentencing factors. This Court has recognized that "[w]hile a district court may certainly consider the 2012 report in choosing the ultimate sentence, the report does not invalidate § 2G2.2" and "use of § 2G2.2 as an advisory guideline" does not make the resulting sentence substantively unreasonable, "limit the district court's discretion to determine what weight to give each § 3553(a) factor," or "require the district court to vary from § 2G2.2 based guidelines range." *United States v. Cubero*, 754 F.3d 888, 900 (11th Cir. 2014).

39

Trader's reliance on this report in light of his factual proffer and the detailed PSR outlining his egregious conduct towards minors and his own children is unavailing. The Sentencing Commission's 2012 Report to Congress primarily focused on non-production offenses of child pornography. Trader's conduct went above and beyond just possessing child pornography. Trader produced horrifying videos depicting the sexual abuse of his two daughters.  The sickening abuse of his two young daughters makes the recommended goals of the Sentencing Commission's 2012 Report to Congress inapplicable. As the Government noted in its sentencing memorandum, a life sentence appropriately reflects the degree of harm Trader did to so many children. (DE 33:11). This Court has repeatedly affirmed advisory-Guideline sentences in cases where, like Trader, the defendants engaged in sexual activity with children: *United States v. Huskey,* 349 F. App'x. 495 (11th Cir. 2009) (70-year sentence for Defendant who fell within criminal history category I, who engaged in anal, oral, and vaginal sex with his daughter, recorded the abuse in photographs and on videotapes, and traded images of the abuse over the internet for other child pornography); *United States v. Oliver,* 281 F.App'x 898 (11th Cir. 2008) (130-year sentence for the Defendant, with no criminal record that was mentioned, who produced images of himself molesting a single victim, his 6-year-old granddaughter, and distributed the images over the Internet); *United States v. Sarras,*

575 F.3d 119 (11th Cir. 2009) (upholding as reasonable a 100-year sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim); *United States v. Foster,* 209 F. App'x. 942 (11th Cir. 2006) (life imprisonment for a Defendant who fell within criminal history category I, and who, during a 4-year period, engaged in oral and vaginal sex with a single victim who was less than 12 years old when the abuse began). Thus, Trader's life sentence is consistent with other cases in this Circuit. Trader has not met his heavy burden to show that his life sentence is substantively unreasonable, and this Court should affirm the district court's sentence.

**Conclusion**

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

Ariana Fajardo Orshan
United States Attorney

By:     *Christine Hernandez*
        Christine Hernandez
        Assistant United States Attorney
        99 N.E. 4th Street, #500
        Miami, FL 33132
        (305) 961-9001
        Christine.Hernandez@usdoj.gov

Emily M. Smachetti
Chief, Appellate Division

Lisa Tobin Rubio
Assistant United States Attorney

Christine Hernandez
Assistant United States Attorney
Of Counsel

42

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,352 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Times New Roman.

## Certificate of Service

I hereby certify that seven copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 10th day of January, 2019, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on.  R. Fletcher Peacock, AFPD.

*/s/ Christine Hernandez*
Christine Hernandez
Assistant United States Attorney

*jp*

43